[957 NYS2d 287]

In the Matter of MICHAEL S. ETKIN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 27, 2012

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Raymond Vallejo* of counsel), for petitioner.

*Hal R. Lieberman* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Michael S. Etkin was admitted to the practice of law in the State of New York by the First Judicial Department on April 9, 1979. At all times relevant to this proceeding, respondent maintained an office for the practice of law in New Jersey where he was admitted in 1981.

The Departmental Disciplinary Committee (Committee) seeks an order, pursuant to 22 NYCRR 603.3, suspending respondent for three months nunc pro tunc to January 4, 2012, predicated upon similar discipline imposed by the Supreme Court of New Jersey (*In re Etkin*, 208 NJ 412, 31 A3d 622 [2011]), or in the alternative, sanctioning respondent as we deem appropriate.

Respondent's misconduct, his failure to safeguard a legal fee that belonged to his former law firm, initially came before the Supreme Court of New Jersey Disciplinary Review Board (DRB) based on an August 2007 disciplinary stipulation between respondent and the New Jersey Office of Attorney Ethics (OAE). Respondent stipulated to violations of New Jersey Rules of Professional Conduct rule 1.15 (b) (failure to promptly notify a third person of receipt of funds in which the third person has an interest), rule 1.15 (c) (failure to safeguard funds in which an attorney and a third person claim interests), and rule 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation). The OAE recommended that the appropriate discipline to impose was a reprimand.

The stipulated facts are as follows: from April 1998 to February 2000, respondent was a non-equity partner of the law firm Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rose P.C. (Ravin firm). On February 12, 2000, shortly before the dissolution of the Ravin firm in April 2000, respondent and 16 other attorneys joined the law firm of Lowenstein Sandler P.C. (Lowenstein firm), his current firm.

While he was with the Ravin firm, respondent had worked on a securities litigation case, *In re Reliance*. All legal fees generated by respondent were to be paid at the conclusion of that case. After respondent joined Lowenstein, he continued to provide legal services in the *Reliance* matter and earned legal fees to which Lowenstein was entitled. On February 27, 2003, approximately three years after he left the Ravin firm, respondent was paid in full for his services in the *Reliance* matter via a check for $217,639.50 payable to Michael S. Etkin, Esq. The Ravin firm's share of this payment was $148,935, while the Lo-

wenstein firm's share was $68,704.50. Respondent did not notify either law firm of his receipt of the check. On March 18, 2003, respondent deposited the $217,639.50 check into his personal bank account which then had a balance of about $13,000. On April 1, 2003, respondent gave the Lowenstein firm its share of the fee via a bank check in the sum of $68,704.50. Respondent did *not* tender to the Ravin firm its share of the fee.

On April 21, 2003, respondent transferred $110,000 from his bank account to his personal money market account. According to the stipulation, $110,000 represented the approximate amount of the Ravin firm's fee less respondent's claim for unpaid salary. The funds remained in the money market account for 17 months after respondent had received the $217,639.50 check. During the interim, the balance in the account fell below $110,000 on 23 occasions. Respondent stipulated that the shortages, which ranged from $280.10 to $34,100.83, were the result of his issuing checks for personal expenses, ATM withdrawals, or transfers to another personal bank account he shared with his wife, and that at all times, he had enough money in both of his personal accounts to cover the Ravin firm's $148,935 total share of the *Reliance* fee.

On January 30, 2004, an attorney at Lowenstein Sandler wrote a letter to counsel for the Ravin firm, regarding the status of the *Reliance* matter. This letter misrepresented the status of the *Reliance* settlement and did not disclose that the fee had already been paid out to respondent 11 months earlier on February 27, 2003. Respondent stipulated that the Lowenstein attorney consulted with him regarding the proposed content of the letter and that the attorney was unaware the letter contained the misrepresentations set forth above. Respondent was also aware that the letter would be sent to Ravin's counsel containing these misrepresentations.

On July 15, 2004, 17 months after he received the *Reliance* check, respondent sent a cashier's check in the amount of $111,905 payable to the Ravin firm, representing the net fee to which the Ravin firm was entitled in connection with the *Reliance* matter, after setting off his claim for unpaid salary in the amount of $35,400. As of August 2007 (the date the stipulation with the OAE was executed), respondent's claim against the Ravin firm for unpaid salary was still unresolved. Pursuant to a consent order entered by an arbitrator, respondent deposited the sum of $45,676.47 into escrow, representing his $35,400 claim for unpaid salary plus $10,276.47 interest on the monies he held back from the Ravin firm.

On January 17, 2008, the stipulation between respondent and the OAE, and the OAE's recommendation of a reprimand were submitted to the DRB and oral argument was held. The DRB remanded the matter to the OAE for the filing of a complaint charging respondent with knowing misappropriation. On February 6, 2008, the OAE, joined by respondent's counsel, filed a motion for reconsideration of the DRB's decision. After considering the motion and holding oral argument, the DRB denied the request for imposition of a reprimand. In a formal decision filed with the New Jersey Supreme Court on May 28, 2008, the DRB reaffirmed its determination to remand the matter to the OAE for the filing of a complaint charging respondent with knowing misappropriation and recommended that the court appoint a special prosecutor and a special master.

In June 2008, the OAE and respondent's counsel filed separate motions to appeal the DRB's decision. By order of February 17, 2009, the New Jersey Supreme Court denied both motions for leave to appeal and remanded the matter to the OAE to designate a special investigator. A special investigator was appointed and, thereafter, filed a report concluding that a formal complaint charging additional unethical conduct was not warranted. By order of January 31, 2011, the New Jersey Supreme Court remanded the matter to the DRB to determine the appropriate discipline to be imposed based on the parties' stipulation and, additionally ordered that, on remand, the matter was to be presented by the Director of the Office of Attorney Ethics or his designee. The OAE and respondent once again recommended a reprimand. The DRB disagreed and determined that a six-month suspension was most appropriate. By order dated December 8, 2011 the New Jersey Supreme Court modified the six-month suspension recommendation and suspended respondent from the practice of law for three months, effective January 4, 2012 (*In re Etkin*, 208 NJ 412, 31 A3d 622 [2011]).

By this proceeding the Committee seeks an order pursuant to 22 NYCRR 603.3 imposing reciprocal discipline. In response to the petition, respondent argues that an identical three-month suspension, nunc pro tunc to January 4, 2012 (effective date of New Jersey Court's suspension), is not required and asks this Court to impose the less severe sanction of public censure. Respondent argues that the conduct at issue dates back to 2003 and occurred in the context of an acrimonious law firm dispute and dissolution; the misconduct is an aberration in that he has an otherwise unblemished disciplinary record and has submit-

ted a character letter in support; he fully cooperated with the New Jersey OAE, including entering into a stipulation regarding the conduct at issue; and every court that has imposed reciprocal discipline based upon his misconduct has not imposed more than a three-month suspension nunc pro tunc to January 4, 2012 (the U.S. District Courts for the Eastern, Southern and Northern Districts of New York have all imposed a reciprocal three-month suspension to run concurrently with the suspension ordered by the New Jersey Supreme Court).

None of the defenses to reciprocal discipline enumerated in 22 NYCRR 603.3 (c) (lack of notice and opportunity to be heard; infirmity of proof in the foreign jurisdiction; or misconduct in the foreign jurisdiction not constituting misconduct in New York), are available. By failing to promptly notify and deliver to the Ravin firm the fee check he received, and in failing to safeguard funds in which the Ravin firm had an interest, respondent violated Code of Professional Responsibility DR 9-102 (c) (22 NYCRR 1200.46 [c] [now Rules of Professional Conduct (RPC) rule 1.15 (c)]). By commingling the fee check with his personal account, respondent violated DR 9-102 (b) (now RPC rule 1.15 [b]). By concealing his receipt of funds from parties that were entitled to them and by misrepresenting the status of the settlement funds, respondent violated DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4] [now RPC rule 8.4 (c)]). With regard to the issue of sanctions, it is generally accepted that the state where the attorney lived and practiced law at the time of the offense has the greatest interest in the matter and in the public policy considerations relevant to the disciplinary actions (*see Matter of Milchman*, 92 AD3d 143, 146 [2012]). In addition, this Court has consistently held that "great weight should be accorded to the sanction administered by the state where the charges were originally brought" (*Matter of Rogge*, 51 AD3d 367, 369 [2008]; *Matter of Gentile*, 46 AD3d 53, 55 [2007]).

Accordingly, the Committee's petition for an order imposing reciprocal discipline should be granted and respondent suspended from the practice of law for a period of three months, nunc pro tunc to January 4, 2012.

MAZZARELLI, J.P., FRIEDMAN, DEGRASSE, FREEDMAN and ABDUS-SALAAM, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of three months, nunc pro tunc to January 4, 2012 and until further order of this Court.